Judge Underwood,
delivered the opinion of the court.
On the 4th of May, 1822, an execution-issued from the- clerk’s office of the Breckenridge circuit court, directed to the sheriff of Hardin county, in favor of James Robinson, against the estate of Samuel Blight. It came to the hands of the sheriff of Hardin on the 24th of May, and was levied on the 3rd of June, upon Blight’s interest, in a tract Gf twenty eight thousand acres, and so much of a tract of one- hundred and thirteen thousand four hundred and eighty two acres, as was situated, in Hardin county. The sheriff made a sale of these lands, in virtue of said, execution at the house of Joseph Woodfolk, on the 8th of July, 1822, when Samuel Martin purchased the twenty eight thousand acres for $80, upon a credit of three months, and the whole of the one hundred and thirteen thousand four hundred and eighty two acres, situated in Hardin county,, except ten thousand acres, to lie- adjoining the Breckenridge county line, and to be included by a line, running parallel therewith, for the sum of $213 58 ‘ cents upon a like credit.
Blight, in his life time, filed a bill to prevent Martin-from obtaining a title through the sheriff, and' to vacate the sale. The suit was !-evived by Blight’s heirs, and the circuit court, notwithstanding the resistance of Martin, set aside the sale, and gave him a decree for his purchase money. To reverse this decree, Martin has appealed to this court..
We shall not reverse the decree. It appears in proof, that Martin engaged to purchase all lands belonging to Blight, situated in Hardin county, for D. R. Southard, and that in the spring or early in the summer of 1822, there was a particular agreement made between Southard and Martin, relative to the purchase of Blight’s tract of one-hundred and thirteen thousand four hundred and eighty two acres, which, Martin informed Southard, was then under execution. South-ard then told Martin, that he would attend the sale ia person, unless Martin agreed to act for him. Martin *492 engaged to act for him as an agent, and the means of raising the money -necessary to pay for the land, were se££]C(j between them. On the day of the sale, Martin, instead of buying the land for Southard, declared that he was purchasing for himself, and that if he got the land he would let the settlers have it at reasonable or Mw piices.
A intends to tboeTrsand land”"which is to he sold by tier execution" B promises" a’ that he will sh^r'ff’s s°] anTpurchase the land for him; A con-promise, and does not in person attend attends but purchases the land for him-lorwiU^t^" suit of defen-dantinexe-aside ike sale asobtained by fraudulent prevention of bidding sale. Purchiuser at whohas^by6’ fraudulent management, ^biUmaVend-mg the sale, will n.ot be hold"property purohased by him.
Thistonduct of Martin, cannot be viewed as correct, By his agreement with Southard, and thereby preventing him from attending the sale, he got dear of that comPe*Blon which was calculated to make the land sell f°r a higher price. After purchasing in his own name he refused to comply with his contract, and to let South-f,r<^ ^ave Bie benefit of his purchase, and attempts to defend himself against Southard, upon the ground, that the contract was parol, and that he used none of South-ar(ps m0ney in payment for the lands, whereby a result-dig trust could be created. Whatever weight there may be in this defence against Southard’s claim to a specific enforcement of the parol agreement, there is none> it is as light as air, when the conduct of Martin is considered in reference to Blight. Southard is shown to be anxious to obtain Blight’s lands; with that view, determines to attend the sale, but declines doing so upon Martin’s promises to act in his behalf. Martin deceives him, and sets up for himself! This isfraudu-management to prevent competition, tending directly to the injury of Blight, whose property by it may-go off at, a greater sacrifice, t We cannot sustain the pUrclia':e of any such bidder. On the contrary, good and morality, equally require that bidders at sheriffs sales, shall do nothing to increase the sacrifices of property, usual upon such occasions, with a view to ^ced their own cupidity, and if they do and should be detected in it, that their purchases should not be per-miited to stand. Suppose a person anxious to specu- % sacrificing the property of a debtor under execution, should fail in with others going to the sale with a view to. bid, and were to induce them to return home, by iMsoty asseriiug lo them, that the sheriff' was sick, disa-hied or dead, and that there would be no sale, and having thus gotten clear of competition, should attend and purchase valuable property for a trille. Ought such a sale to stand? Should any man be permitted to make *493 gain by bis deceitful practices, and that at the expense of the unfortunate, whose property when brought to the hammer, is very apt to go at an under valueji Courts of chancery should set their faces against all tricks and artifices. Under the testimony in the cause, we cannot regard Martin’s conduct in any other light, than unfair towards Blight, and therefore, well fink the court correctly refused to sanction his speculation. If he had not made the agreement with Southard and thereby' prevented him from attending the sale, the land might have sold at a much higher rate. If he had, in good faith, fulfilled his engagement, he would have purchased for Southard, and in that event, if Southard was the agent for Blight, in getting Martin to attend the sale, and buying the land, and had, by promising Blight to attend to the sale,through Martin,prevented Blight from attending, as is charged by Blight, the purchase of Mew-tin would have been for the benefit of Blight. Whether Southard was the agent of Blight for this purpose or not, does not materially aifect the conduct of Martin, so far as fraud can be imputed to him. It may, however, be remarked, that Martin, by several depositions, has proved the confessions and statements of Blight, and by so doing, made them evidence, and thus it appears, that Southard was Blight’s agent, to attend to büyingin the lands for Blight, and that he accomplished it by” substituting Martin.
It is shown in proof, that subsequent to Martin’s purchase, he acknowledged that he made it for the benefit of Blight, and that Blight had paid part of the purchase money. One witness states, that Martin, subsequent to his purchase, told him that he had bought in the land for Blight and had secured it for him, as his agent, and that Blight had deposited §200 with Martin, to buy in and secure his, Blight’s property, in his absence. The obvious tendency of ail this evidence, is to show that Martin acted in bad faith and fraudulently in attempting to appropriate the land purchased to his own use. Whether he was acting as the agent directly of Blight, or as his agent, being employed by Southard, is not a matter of any importance. If, in either capacity, he violated the trust and confidence reposed in him, and thereby prevented Blight or his agent, from attending in person, or procuring another to attend to the sale of the land for *494 him, such a breach of trust operating to the prejudice of Blight, is sufficient to justify the vacation of Martin’s purchase. That this confidence was betrayed the evidence furnishes strong ground to believe. The value of the speculation, presents a motive calculated to operate with a strong influence over one who permits himself to be tempted' from the path of duty. For the quantity of land purchased by Martin, is estimated by one witness, at sixty thousand acres, and its value fixed at from 50 cents, to $¡1 50 cents per acre. An attempt was made to impeach the credibility of those witnesses whose testimony operates most strongly against Martin. It was not successful. We perceive no adequate motive to induce them to commit perjury.
Rudd, for plaintiffs; Mills and Brown, for defendants.
The invalidity of Martin’s purchase, has been placed, by the pleadings upon other grounds, besides that already noticed. It is contended, that the sale is void, because, at the time, a great part, if not the whole of the land, was in possession of persons holding adversely to Blight. The evidence-shows .this to have been the fact. Woodfolk, when the sale took place, wSs adversely possessed. We d.eem it unnecessary, to determine the effect of adverse possession in relation to this sale, or to take this opportunity of approving or rejecting the principles discussed in the case of McConnell vs. Brown, &c., V Mon. 478.
The decree is affirmed with costs.